RECEIVED
U.S. COURT OF APPEALS
FOR THE D.C. CIRCUIT

2008 FEB 19 PM 6: 25

FILING DEPOSITORY

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Cr. No. 98-CR-00329-4 |
| | : |
| WILLIAM SWEENEY | : |
| | : |

**MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE**

**PURSUANT TO 18 USC §2255**

Mr. William Sweeney, by and through undersigned counsel, respectfully moves this Honorable Court for relief from the sentence in this case imposed in violation of the Constitution and laws of the United States.

In support of this motion, counsel states:

1. This motion is based upon all files, records and proceedings in this case, as well as activity and inactivity outside of the record, and any such other materials as may be subsequently submitted.

2. On September 18, 1998, Mr. Sweeney and codefendants were charged by indictment with conspiracy to possess with intent to distribute and distribution of controlled substances, conspiracy to participate in the affairs of a racketeer influenced and corrupt organization ("RICO") and various substantial counts.

2. On March 25, 1999, Mr. Sweeney was charged by the superceding indictment.

3. Mr. Sweeney went to trial with Vincent Hill, Jerome Martin, Sean Coates, Samual Carson and Gary Price.

The defendants were charged with a large-scale narcotics and RICO conspiracy. In furtherance of the conspiracy, Mr. Sweeney was alleged to have engaged in multiple acts of violence; there was no evidence presented at trial that he participated directly in narcotics

distributions. By way of an overview, it was the prosecution's theory that Mr. Sweeney and the other defendants were lifelong friends who grew up during the 1980s in the Greenleaf Gardens neighborhood in southwest Washington. As they entered their teenage years they began selling drugs. By the early 1990s, the Government claimed, most of them were selling substantial quantities of marijuana, along with less significant quantities of other drugs. Most of the sales were made on the 200 block of K Street, SW, and on the corner of Delaware Avenue and K Street, SW. The Government charged that the defendants ran these locations as cooperative markets in which they rotated serving marijuana to customers driving into the area from the D.C. Metro area. The prosecution depicted Vincent Hill as the leader of this "crew," and Mr. Sweeney as one of its members.

The Government also asserted that Mr. Sweeney, along with other defendants, engaged in ventures other than drug dealing, both for purposes of self-enrichment and protection. For example, through the testimony of informants and cooperating insiders, evidence was presented that the defendants sometimes committed kidnappings to fund weapons, drugs or living expenses. Witnesses testified that Mr. Sweeney and others were responsible for a number of acts of violence, some planned and others spontaneous.

On August 15, 2001, a jury found Mr. Sweeney guilty of conspiracy to possess with intent to distribute and distribution of controlled substances[1] (count 1rrs), conspiracy to participate in the affairs of a racketeer influenced and corrupt organization ("RICO")[2] (count

---

[1] Counsel would note that there was no evidence of any drug selling by Mr. Sweeney at trial is this matter but Mr. Sweeney's participation in the conspiracy was by way of other alleged crimes of violence.

[2] Again there was no evidence presented of any drug dealing by Mr. Sweeney but instead, other activities that "contributed" to the conspiracy. In addition to the substantive counts charged, which were incorporated as overt acts of Counts 1 and 2, Mr. Sweeney was also charged with other conspiracies to murder individuals and another murder, which was unproven as an overt act and he was found not guilty. See Verdict Form, Docket Entry 810.

2rrs), attempted murder of Anthony Pryor in aid of racketeering (count 11rrs), first degree murder while armed of Donnell Whitfield (count 15rrs), murder of Donnell Whitfield in aid of racketeering (count 16rrs), murder of Alonzo Gaskins in aid of racketeering (count 25rrs), murder of Darnell Mack in aid of racketeering (count 26rrs), murder of Melody Anderson in aid of racketeering (count 27rrs), use of firearm during and in relation to attempted murder of Anthony Pryor (count 28rrs), use of firearm during and in relation to murder of Donnell Whitfield (count 30rrs), use of firearm during and in relation to murder of Alonzo Gaskins (count 35rrs), use of firearm during and in relation to murder of Darnell Mack (count 36rrs), and use of firearm during and in relation to murder of Melody Anderson (count 37rrs), and possession of a firearm during a crime of violence (murder of Donnell Whitfield (count 41rrs).

    4.    On February 5, 2002, the Court sentenced Mr. Sweeney as follows:

    (A)    As to counts 1rrs, 2rrs , 16rrs , 25rrs , 26rrs , 27rrs:  Mr. Sweeney was sentenced to life imprisonment on each of counts 1rrs, 2rrs, 16rrs, 25rrs, 26rrs and 27rrs; sentences to run concurrently to each other. A supervised release period of 5 years is imposed on each count and is to run concurrently by the counts and concurrently to count 11rrs. A Fine of $500,000.00 is imposed on count 1rrs and is due immediately. It shall be paid through the U.S. Bureau of Prisons Inmate Financial Responsibility Program. A special assessment of $100.00 is imposed on each count and is due immediately.

    (B)    Count 11rrs: the deft. is sentenced to 20 years incarceration, to run concurrently with all other counts; followed by a 3 year period of supervised release, to run concurrently with all other counts. A special assessment of $100.00 is imposed and is due immediately.

    (C)    Count 28rrs: the deft. is sentenced to 5 years incarceration, to run

Case 1:98-cr-00329-RCL   Document 1017   Filed 02/19/08   Page 4 of 17

consecutively to all other counts; followed by 5 years supervised release, to run concurrently with all other counts. A special assessment of $100.00 is imposed and is due immediately.

(D)   Counts 30rrs, 35rrs, 36rrs, and 37rrs: the deft. is sentenced to 20 years incarceration on each of counts 30rrs, 35rrs, 36rrs and 37rrs; to run consecutively to each other and to all other counts. A five year period of supervised release is imposed on each count, to run concurrently with all other counts. A special assessment of $100.00 is imposed on each count and is due immediately.

(E)   On that date, the oral motion of government to vacate counts 15rrs and 41rrs was granted (Count 15rrs merges with count 16rrs and count 41rrs merges with count 30rrs).

5.   The United States Court of Appeals for the District of Columbia Circuit affirmed Mr. Sweeney's convictions. *United States v. Carson et al*, 372 U.S. App. D.C. 251; 455 F.3d 336 (D.C. Cir. July 21, 2006), *petition for rehearing and rehearing en banc denied*, 2006 U.S. App. LEXIS 26335 (D.C. Cir., Oct. 23, 2006).

6.   On February 20, 2007, the Supreme Court denied Mr. Sweeney's petition for writ of certiorari. *Carson et al v. United States*, 127 S. Ct. 1351 (Feb. 20, 2007).

7.   This petition is timely filed because it is filed within one year of the date that the Supreme Court denied Mr. Sweeney's petition for writ of certiorari.

8.   There have been no previous post-conviction petitions, applications, motions, or proceedings filed or maintained by Mr. Sweeney in this or any other federal court with respect to the judgment entered in this case.

9.   Section 2255 of Title 28 permits a prisoner in custody under sentence of a federal

- 4 -

court to move the court to vacate, set aside or correct an erroneous sentence. The Supreme Court has read the statute to provide four grounds on which relief may be claimed: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." *Hill v. United States*, 368 U.S. 424, 428 (1962).

10.   Mr. Sweeney submits that his convictions in this matter were imposed in violation of his right to counsel and right to effective assistance of counsel, both on the trial and appellate levels. The cause of action for ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwell*, 506 U.S. 364 (1993). In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test to determine whether a defendant was denied effective assistance of counsel. Under *Strickland*, the defendant must show that (a) counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (b) counsel's performance prejudiced defendant to such an extent that the result of the proceeding was unreliable. *Id.* at 669. With respect to the "deficient performance" prong, the court must examine the entire proceedings and determine "whether, in light of all the circumstances, the [conduct of defendant's trial counsel was] outside the wide range of professionally competent assistance." *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986) (quoting *Strickland*, 466 U.S. at 690). *Strickland* specifies that an unreliable result means "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant must show that counsel's

performance fell below an objective standard of reasonableness under the prevailing professional norms. *Id.* at 688. In order to obtain relief, the defendant must make both showings. *Id.* However, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case;" rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Id.* at 693. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* Appellate counsel has an obligation to raise all cognizable issues on appeal. *Smith v. Murray,* 477 U.S. 527 (1986); *Evitts v. Lucey,* 469 U.S. 387 (1985).

In failing to properly investigate this case, and in failing to call necessary witnesses at trial and to produce documentary evidence at trial, counsel rendered ineffective assistance of counsel as defined in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the standards set forth in *Strickland*, counsel is obligated to conduct pretrial investigation, including locating and interviewing potential defense witnesses, and subpoenaing favorable witnesses to testify at trial. *Williams v. Washington*, 59 F.3d 673 (7th Cir. 1995); *Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir. 1994); *Bryan v. Scott*, 28 F.3d 1411 (5th Cir. 1994); *Chambers v. Armontrout*, 907 F.2d 8225 (8th Cir. 1990); *United States v. Gray*, 878 F.2d 720 (3d Cir. 1989); *Tosh v. Lockhart*, 879 F.2d 412 (8th Cir. 1989); *Code v. Montgomery*, 799 F.2d 1481 (11th Cir. 1986); *Thomas v. Lockhart*, 738 F.3d 304 (8th Cir. 1984). This rule applies to expert as well as lay witnesses. *United States v. Tarricone,* 996 F.2d 1414 (2d Cir. 1993). Counsel has a similar obligation to investigate evidence that might favor the defense. *Foster v. Lockhart*, 9 F.3d 722 (8th Cir. 1993); *Sims v. Livesay*, 970 F.2d 1575 (6th Cir. 1992).

Mr. Sweeney's counsel's performance at trial was deficient because he failed to adequately prepare for trial, failed to adequately interview and prepare witnesses for testimony,

failed to adequately represent Mr. Sweeney at trial and preserve issues for appeal. His same counsel's performance in handling his appeal was deficient because he failed to raise issues and raise issues in an appropriate manner on appeal. Mr. Sweeney is entitled to relief because his convictions were obtained in violation of his Sixth Amendment right to counsel and to effective assistance of counsel when:

(A) Trial counsel failed call Dr. Jonathan Pincus, a neurologist who examined Mr. Sweeney, to describe Mr. Sweeney's Tourette Syndrome and to refute the witness's testimony that he displayed no symptoms during violent acts and to rebut the importance of witnesses' testimony and the jurors view of Mr. Sweeney and his symptoms in 2001, as his symptoms would be less in court than during stressful events and less severe in 2001 as compared to five to ten years earlier. While defense counsel crossed almost every eyewitness on the barking / tics that Mr. Sweeney exhibited when they knew him or during an alleged incident, other than the defense testimony of Anthony Pryor and Shaheem Johnson, two career criminals, there was no context for this evidence and Mr. Kiersh provided the jury with no explanation for any differences between the witnesses' testimony as well as no explanation for what the jurors saw and heard from Mr. Sweeney during the trial as compared with the eyewitness testimony that one would hear the barks and throat clearing every few minutes or so. Dr. Pincus was announced as a potential witness to the jury and discussed numerous times as a potential witness during the defense case but was not called.

(B) Trial counsel failed to call an alibi witness for the Donnell Whitfield (September 24, 1994) murder, Anthea Henry, who was announced as a potential witness to the jury but declined to be called during the defense case. Courts have found that a

lawyer's failure to investigate potential defense witnesses, as here, combined with the showing of the specific necessity of the importance of the witness' testimony rendered counsel's strategic choice unreasonable and therefore counsel's performance deficient. See, e.g., *Garcia v. Portuondo*, 466 F. Supp. 2d 488 (S.D.N.Y. Dec. 21, 2006)(counsel ineffective in second-degree murder case for failing to adequately investigate and present alibi evidence); *Sanders v. Ratelle*, 21 F.3d 1446, 1457-58 (9th Cir. 1994); *Chambers v. Armontrout*, 907 F.2d 825 (8th Cir. 1990), *cert. denied*, 111 S. Ct. 369 (1990); *Tosh v Lockhart*, 879 F.2d 412 (8th Cir. 1989); *Code v. Montgomery*, 799 F.2d 1481, 1483 (11th Cir. 1986); *Gomez v. Beto*, 462 F.2d 596, 596-97 (5th Cir. 1972).

  (C)  Failure to Recall Witnesses after *Brady* materials were disclosed late

    (i)  Trial counsel failed to recall Reginald Switzer after the late disclosure of *Brady* materials. The defense theory at trial was that Reginald Switzer had killed Donnell Whitfield aka Robocop in retaliation for having been shot by Whitfield and George Seabrooks in 1989 or 1990 (5/23PM Tr. 4). Indeed, Switzer testified that he had killed Seabrooks in retaliation for the shooting and that he had staked out Whitfield's residence at least twice, while armed, but did not take the opportunity to kill him (5/15PM Tr. 7-8). Trial counsel cross-examined Switzer about his motive to kill Whitfield and his attempts to do so (5/15PM Tr. 30-35) and also elicited that, when Sweeney had a conversation with Switzer about Sweeney's altercation with Whitfield at a nightclub, Switzer told Sweeney not to kill Whitfield because Switzer wanted to kill Whitfield (5/15PM Tr. 40). When Montgomery was recalled after Switzer, he then testified that before Whitfield's murder, Switzer had told him about Switzer's desire to "get"

- 9 -

Whitfield (5/23.AM Tr. 53) and that Montgomery and Switzer were *in* a car together at the time of this conversation, and they drove past the building where Whitfield was hustling (id.) When they did so, Montgomery claimed that he offered to "go up there and blast [Whitfield's] ass right now," but that Switzer said he did not have a gun with him (5/23.AM Tr. 54). Montgomery further testified that he later told Carson that Switzer wanted him to kill Whitfield for Switzer, and Carson advised him not to do it because Switzer should handle it himself (id.). After a recess, but before cross-examination of Montgomery had begun, Sweeney's counsel moved the court to sanction the government for failing to disclose that "Mr. Montgomery had cooperated with Mr. Switzer in planning to *kill* Robocop, aka Donnell Whitfield" (5/23PM Tr. 3). Counsel declined the opportunity to recall Switzer and engage in this cross-examination. 5/23PM Tr.5. Counsel should have recalled Switzer to cross him on this subject, both to preserve the issue and to further impeach the individual the defense was accusing of the crime.

   (ii)  Similarly, trial counsel should have recalled Charlene Wilson to impeach her statement made to Detective Warrener that she had merely heard about the murder of rather than she had actually seen the murder. (5/14PM Tr. 55-56).

   (iii)  Finally, trial counsel should have recalled cooperating witness Ronald Sowells. When testifying, Ronald Sowells described an incident where two guys were squeezing people's marijuana bags and then said that they said that they did not want to buy it; he said Sean Coates aka Chin asked for a gun, Sowells

gave him one, Chin chased the guy down, the guy fell and William Bumbrey ran over and shot him. (4/17/01 pm 47-49) After Sowells' testimony, the complainant Roland Brown gave a very different version of events (4/24/01am 41-42). Trial counsel failed to recall Ronald Sowells to challenge his version of the events.

(D)  Trial counsel failed to impeach James Montgomery with prior inconsistent statements made to a defense investigator as well as cross examine him regarding additional bias material.

(E)  Trial counsel failed to provide the trial court with any authority for cross examination of John Venable about his arrest for criminal charges that were dismissed during the time between the alleged crime and his testimony at trial as well as the fact that he perfectly matched the description of the person who murdered Morris Hallman, which lead to a search warrant authorizing police to search his house, and locating the gun and ammunition. *E.g.*, *United States v. Anderson,* 881 F.2d 1128 (D.C. Cir 1989) ("district court's denial of cross-examination of a prosecution witness regarding an unrelated murder indictment against her, dismissed without prejudice eleven months before trial, violated appellants' confrontation rights under the Sixth Amendment....for the jury might reasonably have found that the government's ability to reinstate the murder charge furnished the witness with a motive for favoring the prosecution in her testimony"); *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); *Davis v. Alaska*, 415 U.S. 308, 316-17, 318 (1974); *Alford v. United States*, 282 U.S. 687 (1931).

(F)  Failure to request admission of evidence – admission of party opponent (pleading by USA re unreliability of James Montgomery), Grand Jury witnesses' transcripts as well as Wesley Smith and Frederick Miller's testimony, even if

inadmissible under hearsay rules, given the introduction of this evidence implicated Mr. Sweeney's right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284 (1973)(holding that the exclusion, under state hearsay rules, of exculpatory testimony that another party had committed the crime, which under the circumstances was likely to be trustworthy and within the rationale of the exception for declarations against penal interest denied him a trial in accord with fundamental standards of due process).

    (G)    Failure to make a *Massiah* demand and litigate issues related to jailhouse confessions allegedly made to including but not limited to Charles Bender, Donald Nichols, Eugene Byars, Theodore Watson, Reginald Switzer, and Arthur Rice. *See Watson v United States*, 2008 D.C. App. LEXIS 12 (January 28, 2008)(matter remanded for hearing based on nondisclosure during trial by government regarding witness (the same) Charles Bender) ; *Massiah v. United States*, 377 U.S. 201 (1964).

    (H)    Failure to object to the *ex parte* communications between the Court and juror #3 and subsequent failure to raise this issue properly on appeal. Counsel did not object to not being present for *voir dire* of witness – although asked after the fact for *voir dire* after excused. Based on these *ex parte* communications, Mr. Sweeney's deliberating jury was reduced to 11. This was a critical point[3] where Mr. Sweeney, by and through counsel, had a right to be present and provide input into the process.

    (I)    Failure to provide an opening statement at the beginning of the case.

    (J)    Failure to corroborate jail records with court records which show the same time period of detention, after government counsel crossed the business records custodian

---

[3] A defendant has the right to be informed of the substance of all communications from the jury and has a right to be heard before the court provides a response. *See Rogers v. United States*, 422 U.S. 35 (1975) (right to be present under Fed. R. Crim. P.43); *United States v. United States*

on the alleged unreliability of the records.

      (K)    Failure to properly object and then appeal the court's ruling permitting voluminous use of inadmissible and/or hearsay evidence to establish material facts including, but not limited to (1) the testimony of Medical Examiner Jonathan Arden, who testified as to autopsies he had not conducted, (2) the testimony of police officer regarding fingerprint evidence he had not lifted, examine or compared with the known prints, (3) reputation evidence concerning alleged conspiracy member Wayne Perry, (4) statements of Robert Smith aka Butchie to SA Vincent Lisi, and (5) the constant hearsay testimony, material to the government's case and never proven by competent evidence, that Lil Ty kill Dihru.

11.    In violation of Mr. Sweeney's right to effective assistance on appeal[4], appellate counsel failed to note sections of sealed matters for the Court to review and to cite authority for those requests, in contradiction of the Circuit's direct order (October 2, 2002), although such authority had been provided in the joint co-appellants' motion, so Mr. Sweeney's convictions in this matter were without judicial review of the undisclosed materials and also not providing a statement of facts. Counsel would note that without a statement of facts, the court of appeals cannot know the extent of prejudice and therefore can not ascribe levels of error[5].

---

*Gypsum Co.,* 438 U.S. 422, 460 (1978) (discussing the "hazards of *ex parte* communications with a deliberating jury or any of its members")

[4] *See Cirilo-Munoz v. United States* 404 F.3d 527 (1st Cir. 2005); *United States v. Reinhart,* 357 F.3d 521 (5th Cir. 2004); *United States v. Skurdal,* 341 F.3d 921 (9th Cir. 2003); *Brown v. United States,* 167 F.3d 109 (2nd Cir. 1999); *Jackson v. Leonardo,* 162 F.3d 81 (2nd Cir. 1998); *Roe v. Delo,* 160 F.3d 416 (8th Cir. 1998).

[5] The Court of Appeals stated "[f]irst, the appellants object to discrete, allegedly biased rulings by the trial judge which (1) set the timing of disclosure of exculpatory material under *Brady v. Maryland,* 373 U.S. 83 (1963), and of witness statements to the government under the *Jencks* Act, 18 U.S.C. § 3500; (2) denied defense motions to strike jurors for cause; (3) overruled defense objections to hearsay and opinion testimony of government witnesses and excluded as

Counsel incorporates by reference the requests made in the appellate motion and requests that this Court review the requested materials. In addition, due to the cumulative *Brady* errors, both non disclosure and late disclosure, as well as allegations of prosecutorial misconduct, counsel requests that this Court review in camera the materials sealed by the trial court.

12. Mr. Sweeney is sentenced to consecutive sentences in violation of the Double Jeopardy Clause of the United States Constitution when counsel failed to object to and did not raise on appeal the consecutive sentences Mr. Sweeney received for using a firearm in relation to a crime of violence, Counts 35rrs, 36rrs, and 37rrs, namely the triple homicide. *See Matthews v. United States*, 892 A.2d 1100 (D.C. 2006); *Monroe v. United States*, 600 A.2d 98 (DC 1991); *Nixon v. United States*, 730 A.2d 145, 153 (D.C. 1999)(holding that multiple PFCV convictions will merge, even if the predicate felony offenses do not merge, if they arise out of a defendant's uninterrupted possession of a single weapon during a single act of violence); *United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987)(imposition of consecutive sentences for 2 violations of 18 USCS § 924 violates Double Jeopardy Clause, since legislative history does not indicate that

---

hearsay testimony of a defense witness; and (4) limited the scope of defense cross-examination. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). "Almost invariably, they are proper grounds for appeal, not for recusal." *Id.* "In and of themselves (i.e., apart from surrounding comments or accompanying opinion), they . . . can only in the rarest circumstances evidence the degree of favoritism or antagonism required when no extra-judicial source is involved." *Id.* The isolated unfavorable rulings the appellants cite in the course of a trial proceeding lasting some nine months do not constitute such "rare circumstances." Nor does the fact that the judge may have ruled in favor of the government more often than he did in favor of the defense, as the appellants contend, by itself show bias. *See Edmond*, 52 F.3d at 1100 ("Appellants do not claim that a greater percentage of government requests than defense requests were granted, but even if that were the case such a disproportion would be insufficient by itself to establish bias." (citing *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985) ("[A] trial judge must rule on countless objections, and a simple numerical tally of those sustained and overruled, one which here favors the government, is not enough to establish that the scales of justice were tipped against a defendant.")). The record here does not show that the judge did so disproportionately or unjustifiably."

Congress foresaw how court should determine number of crimes of violence that have occurred in single criminal transaction); *Bruce v. United States, 471 A.2d 1005*(D.C. 1984).

13.     Mr. Sweeney's convictions were imposed in violation of his right to counsel of choice and right to effective assistance of counsel, specifically by the Court refusing to appoint counsel (Kenneth Robinson) who had been retained for the triple homicide in Prince George's County (the center of the case against Mr. Sweeney) and later disqualifying defense counsel who was appointed with prior second counsel moved to withdrawal due to a career change. This egregious error was compounded by counsel's failure to immediately appeal, *see United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975) (citing *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949)), or subsequently appeal the Court's pretrial denial of Mr. Sweeney's right to counsel – denial of Mr. Sweeney's Motion for Appointment of Counsel (Kenneth Robinson) and the November 13, 2000 order granting the government's motion to disqualify[6] Leonard Long as counsel for Mr. Sweeney. The government had further exacerbated the problem when it moved to disqualify[7] Leonard Long, a mere three weeks before trial, without justifiable reason and in interference with Mr. Sweeney's rights, based on a theory of conflict regarding Leonard Long's previous representation of Stephon Mason, who was a possible codefendant as an accessory after the fact for a murder (of Keith Johnson) Mr. Sweeney was not charged with in this case. This resulted in Mr. Sweeney proceeding to trial with one counsel, after the Court had found that his

---

[6] Mr. Long was allegedly conflicted due to his prior representation of Stephon Mason. Both Mr. Sweeney and Mr. Mason would waive this potential conflict and since there was no actual conflict, the discharge of Mr. Long was based on a non issue. As such, this was error and in violation of Mr. Sweeney's Sixth Amendment rights. See *Harling v. United States,* 387 A.2d 1101 (DC 1978)(holding that once an attorney is serving under a valid appointment by the court and an attorney-client relationship has been established, the court may not arbitrarily remove the attorney, over the objections of both the defendant and his counsel); *see also English v. State*, 259 A.2d 822, 826 (MD 1969); *McKinnon v. State*, 526 P.2d 18 (Alaska 1974); *Smith v. Superior Court of Los Angeles County*, 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65 (1968) (*en banc*).

matters necessitated two attorneys to stay appointed, even after the death penalty was taken out of the case. This then was compounded by the failure of counsel to request any remedial measure such as additional second counsel or a continuance.

14. Mr. Sweeney's convictions were obtained in violation of his right to present a defense, secured by his rights under the Due Process Clause of the United States Constitution, when between counsel's ineffective attempts, the government's opposition, and the court's rulings, the testimony that exculpated Mr. Sweeney from both the Donnell Whitfield murder, Glenn Jenkins murder (that he was acquitted of) and triple homicide was not admitted in the Court, namely, (1) the sworn statements of Cheree Owens and John Pinkney in the Prince George's County Grand Jury implicating Dennis Green and his friends in the triple homicide, (2) the proferred testimony of Wesley Smith, to whom Robert Smith aka Butchie confessed involvement in the triple homicide, and (3) the testimony of Frederick Miller, regarding Little Ty's confession to killing Glenn Jenkins. Counsel compounded the problem by not raising this issue, the violation of Mr. Sweeney's constitutional right, on appeal.

15. Mr. Sweeney has been denied his right to effective assistance of counsel, as great portions of the trial file and appellate file are unavailable to counsel appointed to investigate and litigate matters in this 18 USC § 2255 proceeding. While counsel does have *some* of the materials provided in discovery and during trial, most were not provided by previous counsel and counsel will therefore need leave of this Court to supplement with additional material as it becomes available (and likewise may withdrawal some claims after review of the now unknown materials are provided) but Mr. Sweeney is also prejudiced without possible remedy, as apparently defense work product has also been lost, which may irreparably harm Mr. Sweeney in attempting to litigate his ineffective claim and other post conviction matters in this case.

16. In reviewing the files and records that are currently available Counsel for Mr. Sweeney believes that the prosecutors engaged in deliberate misrepresentations and other prosecutorial misconduct, including but not limited to the nondisclosure and late disclosure of *Brady* information and the use of perjured testimony, in violation of Mr. Sweeney's constitutional rights, but counsel needs further investigation as well as a complete set of discovery, *Jencks*, *Brady*[8] and *Giglio* provided to trial counsel. Initially, counsel raises the following matters in this category:

(i) Suppression of information impeaching James Montgomery's credibility – noteably the basis for the government's admission of his unreliability in 1991 and its subsequent assessment of his unreliability pertaining to the homicide of Paul Ridley (information conveyed to and assessed by the government *before* Mr. Sweeney's trial) as litigated in the *United States v. Steven Dewitt*, who was locked up for the murder of Paul Ridley for a decade, when apparently the government had learned but did not believe James Montgomery's information that Sam Carson had confessed the murder to him.

(ii) Prosecutorial misconduct in obtaining testimony by any means necessary, including but not limited to procuring Arthur Rice's testimony by misrepresentation and bending of the procedural rules in his Rule 35 motion for reduction and the initial and then two subsequent plea agreements with James Montgomery after he lied and violated previous plea agreements. *Mooney v Holohan* 294 U.S. 103 (1935)(Government has an obligation to the truth).

(iii) procuring "jailhouse" confessions in violation of Mr. Sweeney's Sixth

---

[8] Counsel speaks of materials disclosable under *Brady v. Maryland*, 373 U.S. 83 (1963) and subsequent caselaw, noteably, *United States v. Agurs*, 427 U.S. 971 (1976), *United States v. Bagley*, 473 U.S. 667 (1985); *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

Amendment rights. *See Massiah v. United States*, 377 U.S. 201 (1964).

17.     Counsel also incorporates by reference the claims raised by co-defendants in their post conviction petitions related to trial and appellate counsel's ineffectiveness, based on actions and omissions, as due to the fact that in this group prosecution, actions and inactions by other counsel affected the case against and defense of Mr. Sweeney.

18.     Mr. Sweeney requests discovery and an evidentiary hearing on this motion and seeks leave to supplement the issues when discovery is received or provided access to transcripts currently unavailable to counsel.

WHEREFORE, for the foregoing reasons, both singularly and in the aggregate, for the reasons set forth in legal memorandum and exhibits and for such other reasons as may be subsequently submitted or may appear at a hearing in this matter, counsel and Mr. Sweeney ask that the Court grant this motion.

Respectfully submitted,

/s/
JENIFER WICKS
Bar No. 465476

Law Offices of Jenifer Wicks
The Webster Building
503 D Street, N.W.
Suite 250A
Washington, D.C. 20001
(202) 393-3004
Facsimile (202) 478-0867